IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| William M. Craig, III; Tina Craig, | Case No. 7:22-cv-01164-JDA |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| Sauer Brands, Inc., | |
| Defendant. | |
| Sauer Brands, Inc., | |
| Third Party Plaintiff, | |
| v. | |
| EcoLab, Inc., | |
| Third Party Defendant. | |

This matter is before the Court on a motion for summary judgment filed by Third Party Defendant EcoLab, Inc. ("EcoLab"). [Doc. 67.] The motion has been fully briefed [Docs. 71; 76; 96; 97; *see also* Doc. 92] and is ripe for consideration. For the reasons discussed, EcoLab's motion is granted in part and denied in part.

**BACKGROUND**

In ruling on a motion for summary judgment, this Court reviews the facts and reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). Viewed in the light most favorable to Defendant/Third Party Plaintiff

Sauer Brands, Inc. ("Sauer Brands"), the summary judgment record reveals the following facts.

**Sauer Brands and EcoLab**

Sauer Brands manufactures condiments and sauces for retail and food service customers. [Doc. 73-5 at 76 (75:10–16).] In compliance with regulations from the U.S. Food and Drug Administration ("FDA"), Sauer Brands cleans its production lines daily to prevent cross contamination and promote safe food. [*Id.* at 77 (76:2–13); Doc. 73-6 at 29 (29:17-23).] To accomplish this task, Sauer Brands has clean-in-place ("CIP") systems, which are automatic cleaning systems that clean inside pipes. [Docs. 73-5 at 76–77 (75:17–76:1); 73-6 at 26 (26:18–24); *see also* 73-7 (plant layout showing CIP areas).]

EcoLab's food and beverage division sells cleaning chemicals to food manufacturers. [Doc. 73-6 at 24–25 (24:20–25:10).] Sauer Brands entered into an agreement (the "Contract") with EcoLab in August 2018 that required Sauer Brands to purchase its chemical cleaning and sanitizing products exclusively from EcoLab. [Doc. 73-2.] The Contract also provided that EcoLab would loan certain equipment to Sauer Brands. [*Id.* at 1–2, 7.] Additionally, when EcoLab sells chemicals to customers, it provides services to them as well to ensure that their manufacturing and cleaning comply with FDA standards. [Doc. 67-2 at 10–11 (10:19–11:14).]

**The Contract**

The Contract includes the following indemnification provision (the "Indemnification Clause"):

> CUSTOMER INDEMNIFICATION. With regard to third party claims, Ecolab will indemnify, defend, and hold [Sauer Brands] harmless from and against any liability, including reasonable attorneys' fees and court costs, relating to bodily injury, death

> or property damage, but only to the proportionate extent that such injury, death or property damage is caused by (i) Ecolab's breach of warranties given in this agreement or (ii) Ecolab's (or Ecolab's employees' or agents') negligent or intentionally wrongful acts or omissions. [Sauer Brands] must give Ecolab prompt written notice of any claim for which [Sauer Brands] intends to seek recovery from Ecolab under this Agreement. [Sauer Brands] may not settle, defend, or litigate any claim for which [Sauer Brands] seeks or will seek indemnification from Ecolab without the prior written consent of Ecolab, and Ecolab will not be liable for any settlement or claim established against, or cost or expense incurred by, [Sauer Brands] without that prior written consent.

[Doc. 67-6 ¶ 7.] The Contract also provides that it "is governed by the internal laws of Minnesota without regard to the conflict of laws rules, provisions or statutes of any jurisdiction." [*Id.* ¶ 14.]

**The November 25, 2019, Incident**

Plaintiff William M. Craig, III ("Mr. Craig") worked for EcoLab as an account manager in the food and beverage division, selling cleaning chemicals and providing services to his customers. [Doc. 73-6 at 24 (24:7–19).] Sauer Brands was one of Mr. Craig's customers, and he visited its facility at least twice per month. [Doc. 73-6 at 25 (25:6–12), 30 (30:4–10).]

On November 25, 2019, Mr. Craig arrived at the Sauer Brands facility and set out to check on the CIP systems. [Doc. 73-6 at 48 (48:5–12), 50 (50:1–19).] While there, he walked into a CIP room and saw that the CIP system was overflowing. [*Id.* at 52 (52:21–22).] As he walked toward the CIP tank, Mr. Craig's glasses fogged up. [*Id.* at 58 (58:1–6).] He wiped off his glasses and continued toward the tank. [*Id.* at 58 (58:6–18).] At that point, Mr. Craig tripped over a hose he had previously used to wash away leaked chemicals. [*Id.* at 52–53 (52:22–53:9).] Mr. Craig fell face first into a push-up position on

3

the ground and into a puddle of chemicals that had overflown from the CIP system. [*Id.* at 59 (59:5–17).]

Mr. Craig sustained third-degree burns over 14.5 percent of his body and second-degree burns over other parts of his body, and the Augusta Burn Center performed grafting on the third-degree burns using cadaver and pig skins. [*Id.* at 80 (80:9–15).] Later, Mr. Craig started developing pain in his shoulder, elbow, and arm, and ultimately had surgery on his left shoulder, left elbow, and left wrist. [*Id.* at 81–82 (81:18–82:13).]

**This Action**

Plaintiffs filed this action in the Spartanburg County Court of Common Pleas on March 4, 2022, and Sauer Brands removed it to this Court on April 8, 2022. [Docs. 1; 1-1.] Plaintiffs filed an Amended Complaint on January 25, 2023, asserting claims against Sauer Brands for negligence/gross negligence based on its failure to maintain a safe working environment and failure to provide an adequate emergency response system, for strict liability based on its failure to properly handle and store dangerous chemicals, for vicarious liability, and for loss of consortium. [Doc. 38 ¶¶ 29–50.] They seek actual and punitive damages and costs. [*Id.* at 7.]

Sauer Brands filed a Third Party Complaint against EcoLab on September 15, 2022, and re-filed the Third Party Complaint when it filed its Answer to Plaintiffs' Amended Complaint on February 8, 2023. [Docs. 19; 46.] The Third Party Complaint asserts claims against EcoLab for contractual indemnification, equitable indemnification, and breach of contract. [Doc. 46 ¶¶ 56–69.]

**APPLICABLE LAW**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute.  *Id*. at 322.  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Id.* at 248.  "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits. Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256.

## **DISCUSSION**

EcoLab seeks summary judgment as to all claims asserted against it. [Doc. 67-1.] It argues that Sauer Brands cannot prevail on the contractual indemnification claim because EcoLab never agreed to indemnify Sauer Brands for its own negligence, that the breach of contract claim fails because EcoLab has no duty to contractually indemnify Sauer Brands, and that Sauer Brands has no right to equitable indemnification. [*Id.* at 14–20.] In response, Sauer Brands clarifies that it "is not arguing that Ecolab is required to indemnify Sauer Brands for its own alleged negligence" [Doc. 71 at 5], and argues that

6

EcoLab's motion must be denied because genuine issues of material fact exist regarding all claims [Doc. 71 at 4–8]. The Court begins by addressing the contractual indemnification and breach of contract claims.

**Contractual Indemnification and Breach of Contract Claims**

Upon review of the parties' initial briefing regarding EcoLab's motion for summary judgment, the Court questioned whether the underlying claims for which Sauer seeks indemnification are third-party claims as required by the Contract's Indemnification Clause. Accordingly, the Court directed the parties to brief that particular issue. [Doc. 92.] The parties have now briefed the issue [Docs. 96; 97], and the Court begins by interpreting the meaning of the term "third party" in the Contract.

Sauer Brands contends that the plain language of the Contract shows that it is between two corporate entities—EcoLab and Sauer Brands—and it contains no language indicating that the term "Ecolab" includes its employees; therefore, Sauer Brands argues Plaintiffs' claims must be considered third-party claims. [Doc. 96 at 3–4.] Sauer Brands also argues that EcoLab's interpretation of the Indemnification Clause reads language into the Contract that is not there. [*Id.* at 4–5.] Finally, Sauer Brands contends that, if the Court questions whether "Ecolab" includes its employees, the Contract is ambiguous, and any ambiguity must be resolved by a jury. [*Id.* at 5.] EcoLab, on the other hand, argues that the Contract is not ambiguous under Minnesota law and that its plain language mandates that the term "third party" does not include EcoLab employees. [Doc. 97 at 2–3.]

"The cardinal purpose of construing a contract is to give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." *Art*

7

*Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997). And the construction of a contract is a question of law for the court to decide unless there is ambiguity. *Id.* Whether a contract is ambiguous is also a question of law. *Current Tech. Concepts, Inc. v. Irie Enters.*, 530 N.W.2d 539, 543 (Minn. 1995). A contract is considered ambiguous "if its language is reasonably susceptible of more than one interpretation." *Id.*

When construing a contract, courts give the contractual language "its plain and ordinary meaning." *Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). Courts "construe a contract as a whole and attempt to harmonize all clauses of the contract." *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn. 1990). Additionally, in construing a contract, courts "attempt to avoid an interpretation . . . that would render a provision meaningless." *Id.* at 526. Courts "will not construe the terms so as to lead to a harsh and absurd result." *Brookfield Trade Ctr.*, 584 N.W.2d at 394.

Here, the Contract does not define "third party." [*See generally* Doc. 67-6.] The term "third party" is used in the Indemnification Clause as outlined above and in the confidentiality provision that follows the Indemnification Clause (the "Confidentiality Clause"). [*Id.* ¶¶ 7–8.] The Confidentiality Clause provides as follows:

> **CONFIDENTIALITY.** The Product prices and other terms of this Agreement must be treated by [Sauer Brands] as confidential and may not be disclosed or shown to any third party (including, without limitation any customer portals or third party.com's) without the prior written consent of Ecolab. [Sauer Brands] agrees to inform its personnel and agents of this requirement. The disclosure of the terms of this Agreement by [Sauer Brands], its personnel or agents to an Ecolab competitor is a material breach of this Agreement.

> [Sauer Brands] may not post any information relating to this Agreement on the Internet.

[*Id.* ¶ 8.]

Applying Minnesota law's contract construction principles, the Court concludes that Mr. Craig, as an employee of EcoLab, is not a third party as that term is used in the Contract. Construing the term "third party" to include EcoLab employees would lead to the absurd result that Sauer Brands would be prohibited from discussing pricing and other confidential EcoLab information with EcoLab employees under the Confidentiality Clause. Therefore, the Court's reading of the Contract as a whole shows that "third party" is unambiguous, as it is reasonably susceptible to only one interpretation. *Bd. of Directors, Colony by Greens Townhome Ass'n v. Santopietro*, No. A23-0535, 2023 WL 8013128, at *3 n.2 (Minn. Ct. App. Nov. 20, 2023) (concluding that the lower court did not err by determining a contract was unambiguous where a provision, when "logically interpreted," was "only susceptible to one reasonable interpretation"). Here, the only way to harmonize all clauses of the contract is to construe the term "third party" as not including EcoLab employees. Accordingly, "third party" is unambiguous and EcoLab's motion for summary judgment is granted as to the contractual indemnification and breach of contract claims to the extent Sauer Brands seeks indemnification for Mr. Craig's underlying claims.

On the other hand, Plaintiff Tina Craig ("Mrs. Craig"), Mr. Craig's wife, was not an EcoLab employee and is therefore not excluded from being a third party within the meaning of the Contract. EcoLab argues it is nonetheless entitled to summary judgment because loss of consortium claims are derivative claims under Minnesota law, and "[i]t would be an absurd result to treat the loss of consortium claim as separate under the indemnity clause of the contract." [Doc. 97 at 3.] Further, EcoLab contends that even if

this were not true, "[t]here simply is no situation where Ecolab could ever be required to indemnify [Sauer Brands] no matter who is found at fault" because "[i]f Mr. Craig is found at fault for his own injuries, [Sauer Brands] will not be liable to either of [Plaintiffs] and there will be nothing to indemnify," and "[i]f [Sauer Brands] is found at fault for Mr. Craig's injuries, there would still be nothing to indemnify as Ecolab only agrees to indemnify to the proportionate extent the injury is the fault of Ecolab or its employees." [Doc. 97 at 3–4; *see also* Doc. 67-1 at 14–18.] The Court rejects both arguments.

As an initial matter, although the contract at issue in the Third Party Complaint is governed by Minnesota law, Mrs. Craig's underlying loss of consortium claim "is an action in tort for actual damages as a result of the loss of companionship, aid, society, and services of" Mr. Craig, *Gov't Emps. Ins. v. Poole*, No. 3:16-cv-01934-JFA, 2018 WL 11404437, at *8 (D.S.C. Dec. 13, 2018), and is governed by South Carolina law, *Small v. WellDyne, Inc.*, 927 F.3d 169, 173 n.3 (4th Cir. 2019) (explaining that, when federal jurisdiction is based on diversity of citizenship of the parties under 28 U.S.C. § 1332, courts apply the forum state's substantive laws, including its choice of law rules); *Boone v. Boone*, 546 S.E.2d 191, 193 (S.C. 2001) ("Under traditional South Carolina choice of law principles, the substantive law governing a tort action is determined by the lex loci delicti, the law of the state in which the injury occurred."); [Doc. 38 ¶ 4 ("All activities which give rise to this claim occurred at [Sauer Brands'] plant location in Spartanburg County, South Carolina.")]. And under South Carolina law, "loss of consortium is an independent action, not derivative." *Preer v. Mims*, 476 S.E.2d 472, 474 (S.C. 1996).

Moreover, EcoLab's position that there is no situation in which it could ever be required to indemnify Sauer Brands focuses only on the Contract's language that EcoLab

will *indemnify* Sauer Brands and fails to address the Contract's language that EcoLab will *defend* Sauer Brands against third party claims relating to bodily injury, *see John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 418 (8th Cir. 1991) ("It is well-settled, under Minnesota law, that the duty to defend and the duty to indemnify are two issues, not one."); *Brown v. State Auto. & Cas. Underwriters*, 293 N.W.2d 822, 825 (Minn. 1980) ("The duty to defend is distinct from and broader in scope than the duty to indemnify . . . ."). EcoLab contends that it does not owe defense costs because Mrs. Craig's claim is "directed solely at [Sauer Brands] and [is] not in any way directed at Ecolab" and that "[w]hatever expenses [Sauer Brands] has incurred to defend the suit arise from [Sauer Brands'] own conduct, not from any action or inaction of Ecolab." [Doc. 76 at 4.] However, EcoLab improperly focuses on the claim alleged by Mrs. Craig instead of the language of the Indemnity Clause. *See Howard Homes, Inc. v. Keeler Stucco, Inc.*, No. A06-2036, 2007 WL 4234628, at *3 (Minn. Ct. App. Dec. 4, 2007). "The purpose of the [Indemnity Clause] is to hold [EcoLab] responsible for any losses incurred by [Sauer Brands] due to the fault of [EcoLab], an acceptable application of the remedy of indemnity." *Id.*; *see also Braegelmann v. Horizon Dev. Co.*, 371 N.W.2d 644, 645–47 (Minn. Ct. App. 1985) (analogizing an indemnity agreement that provided indemnification "to the extent caused in whole or in part by any negligent act or omission of the [indemnitor]" to comparative negligence such that each party was accountable to the extent its own negligence contributed to the injury). In this case, although Mrs. Craig brought her claim solely against Sauer Brands, Sauer Brands contends that—and questions of fact exist as to whether—EcoLab's negligence contributed to Mrs. Craig's injury, thereby bringing the claim within the Indemnity Clause. Accordingly, EcoLab's

11

motion for summary judgment is denied as to the contractual indemnification and breach of contract claims to the extent Sauer Brands seeks indemnification for Mrs. Craig's underlying loss of consortium claim.

**Equitable Indemnification Claim**

EcoLab argues that it is entitled to summary judgment on Sauer Brands' equitable indemnification claim because equitable indemnification is not available against an employer who has paid workers' compensation benefits and because only a non-negligent party is entitled to equitable indemnification. [Doc. 67-1 at 18–20.]  The Court agrees that EcoLab is entitled to summary judgment on Sauer Brands' claim for equitable indemnification.

"Under [S.C. Code § 42-1-580], an employer's payment of benefits to an employee generally satisfies all claims that third parties might have against the employer arising out of the same accident.  However, a workers' compensation statute does not insulate an employer from liability under an express indemnification agreement." *BET Plant Servs., Inc. v. W.D. Robinson Elec. Co.*, 941 F. Supp. 54, 56 (D.S.C. 1996).  Accordingly, the court in *BET Plant Services* allowed a third party's cause of action for contractual indemnification against an employer to proceed. *Id.* at 56–57.  On the other hand, the court in *Brayboy v. MST-Maschinenbau GmbH*, No. 4:14-cv-02965-RBH, 2015 WL 2062558 (D.S.C. May 4, 2015), dismissed a third-party claim for equitable indemnification, noting the third-party defendant, who was the plaintiff's employer, was immune from liability absent an agreement to indemnify. *Id.* at *3 ("Here, there is no allegation of an express indemnification agreement.  As a result, in the absence of an express agreement to indemnify, [the employer] is immune from common law claims for

indemnity . . . ."). The reasoning in *BET Plant Services* and *Brayboy* is persuasive, and based on that reasoning, the Court concludes that, although Sauer Brands' claims for contractual indemnification and breach of contract, seeking indemnification for Mrs. Craig's underlying loss of consortium claim, may proceed, its claim for equitable indemnification may not.[1] Accordingly, EcoLab's motion for summary judgment is granted as to Sauer Brands' equitable indemnification claim.

## CONCLUSION

For these reasons, EcoLab's motion for summary judgment [Doc. 67] is GRANTED IN PART and DENIED IN PART. The motion is granted as to Sauer Brands' (a) equitable indemnification claim and (b) contractual indemnification and breach of contract claims to the extent Sauer Brands seeks indemnification for Mr. Craig's underlying claims. The motion is denied as to Sauer Brands' contractual indemnification and breach of contract claims to the extent Sauer Brands seeks indemnification for Mrs. Craig's underlying loss of consortium claim.[2]

---

[1] The Court notes that Sauer Brands has not responded to EcoLab's argument that equitable indemnification is not available against an employer who has paid workers' compensation benefits. [*See* Doc. 71 at 8.] Instead, Sauer Brands asserts only that questions of fact exist as to which party, Sauer Brands or EcoLab, is at fault in this case. [*Id.* at 8.] Additionally, neither party specifically addressed whether the reasoning in *BET Plant Services* and *Brayboy* apply to Mrs. Craig, who was not employed by EcoLab. Given that the Supreme Court of South Carolina has held that the South Carolina Workers' Compensation Act bars a spouse "from bringing an action for loss of consortium against his [spouse's] employer," *Lowery v. Wade Hampton Co.*, 241 S.E.2d 556, 558 (S.C. 1978), the Court concludes that Sauer Brands is not entitled to equitable indemnification for either Mr. Craig's or Mrs. Craig's claims.

[2] Because the Court concludes that EcoLab's motion should be granted in part and denied in part for the reasons discussed, the Court declines to address the parties' other arguments.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

September 22, 2025
Greenville, South Carolina

14